

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2007

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4539

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Singh v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1620.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1620

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4539

NISHAN SINGH,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A16-081-976)
Immigration Judge: Honorable William K. Strasser

Submitted Under Third Circuit LAR 34.1(a)
January 9, 2007

Before: SLOVITER and RENDELL, Circuit Judges,
and RUFE,* District Judge.

(Filed: February 15, 2007 )

OPINION OF THE COURT

*Honorable Cynthia M. Rufe, District Judge for the Eastern District of Pennsylvania,
sitting by designation.

RENDELL, Circuit Judge.

Nishan Singh petitions for review of the decision of the Board of Immigration Appeals ("the Board") affirming the denial of his application for asylum, application for withholding of removal under the Immigration and Nationality Act, and request for withholding of removal under Article 3 of the Convention Against Torture.

**I.**

Singh, a 26-year-old Sikh, was born in the Punjab region of India. He arrived in the United States in 1998 and subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture. Singh argues that he is eligible for a grant of asylum based upon his well-founded fear that he will be persecuted if he returns to India because of his membership in the Akali Dal Mann party. At a hearing before an Immigration Judge ("IJ"), Singh testified that he was told that his father died in 1984 at a Sikh celebration after members of the Indian army opened fire on the group. Singh proffered a copy of his father's death certificate, which stated that his father died in 1984 in Punjab. Singh also testified that on November 1, 1997, the police kidnapped Singh's brother because of his brother's involvement with the Akali Dal Mann party. Singh stated that he joined the Akali Dal Mann party on the day his brother was kidnapped. Singh proffered his party membership card and letter from the party's Chief Spokesman and Secretary to corroborate his testimony that he is a party member. However, Singh's party membership card states that he joined the party on November 1, 1998.

2

Singh testified that after he joined the Akali Dal Mann party, the police beat him on three occasions. On the first occasion, December 31, 1997, Singh was hanging posters for the party when the police took him and a friend to the police station and beat them. Singh was held at the police station for two days and was released when he promised to cease working for the party. After his release, two friends gave Singh a ride home to his mother's house where Singh's wife treated his injuries. Singh testified that his two friends, wife, and mother all had the opportunity to observe that Singh had been beaten. On the second occasion, January 26, 1998, Singh was arrested while attending a rally organized by the party. The police held Singh for seven days and beat him a number of times. The head of the village was able to obtain Singh's release and a doctor's assistant treated his wounds. On the third occasion, the police stopped Singh on August 15, 1998, as he was transporting people to a rally. The police beat Singh and the other people in the vehicle and then took him to the police station, where they held him for two days. Singh testified that he heard the police talking about killing him in a "fake police encounter." Singh was released after paying a bribe to the police. After this incident, Singh stayed with friends in Delhi, who gave him cream for his injuries.

Singh first testified that he left India in October 1997, but later said that he left in October 1998. Singh came to the United States as a crewman and deserted the ship once he arrived here. According to the Report of Deserting Crewman, Singh entered the United States on November 29, 1998, and deserted on December 2, 1998. Singh testified

3

that he continued to work for the party after entering the United States, but did not provide any documentary evidence to support this assertion. Singh noted that he obtained a divorce from his Indian wife after he came to the United States, but had trouble remembering the dates of his first marriage and divorce.

Singh testified that he is afraid to return to India because he believes that he will be arrested and killed upon his return. Singh added that his mother told him that it was not safe to return to India, and that the police kidnapped his cousin in 1999. Singh married an American citizen after entering this country. At one point he testified that they were married in July 2003, but he later said that they married in 2002.

Singh presented little evidence to corroborate his verison of events. Singh proffered the divorce decree from his first marriage, which stated that the police had harassed Singh's wife because of Singh's political activities. Singh also presented articles and reports describing persecution of Sikhs and party members in India. However, Singh did not proffer affidavits from anyone who had observed the injuries that he sustained from the beatings by the police. Singh testified that he did not believe affidavits were necessary and that his lawyer had not asked him to obtain them.

The IJ denied Singh's request for asylum on the ground that Singh failed to convince the IJ of the truthfulness and veracity of his claims. The IJ found that Singh's testimony and the evidence he proffered were insufficient "to provide a credible basis for the Court to make a determination that asylum should be granted in this case." The IJ

noted that there was "not one scintilla of evidence submitted by [Singh's] wife, by his mother, by the doctor who treated him on two occasions on one of these alleged beatings, and by the party head who helped him allegedly on the third occasion to obtain his release from police authorities." The IJ added that Singh had failed to explain satisfactorily why his party membership card seems to indicate that he did not join the party until November 1, 1998. The IJ denied Singh's application for withholding of removal because Singh failed to establish that there is a clear probability that his life or freedom would be threatened if he returns to India, and denied his application for relief under Article 3 of the Torture Convention because Singh failed to establish that it is more likely than not that he would be tortured on his return to India. Singh appealed the decision of the IJ and the Board affirmed without opinion.

## II.

Singh argues that the IJ did not make a proper adverse credibility finding against him and that, in the absence of such a finding, Singh's credible testimony established his claim for relief. However, we need not determine whether the IJ made a proper credibility finding because, as we have previously held, an IJ may sometimes require an otherwise-credible applicant to supply corroborating evidence in order to meet his burden of proof. *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001); *see also Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005) (denying petition for review of IJ's decision because, even assuming IJ did not make a valid credibility determination, petitioner could

5

be required to supply corroborating evidence to meet her burden of proof).  Here, because

of the weakness of Singh's proffered evidence and his testimony suggesting that

corroborating evidence was available, the IJ did not err in requiring Singh to proffer some

corroborating evidence in order to meet his burden of proof.  When an IJ requires

corroborating evidence of an otherwise-credible applicant, the IJ must conduct "a three

part inquiry: (1) an identification of the facts for which it is reasonable to expect

corroboration; (2) an inquiry as to whether the applicant has provided information

corroborating relevant facts; and, if he or she has not, (3) an analysis of whether the

applicant has adequately explained his or her failure to do so."  *Abdulai*, 239 F.3d at 554

(internal quotations omitted).  With regard to the first part of the *Abdulai* inquiry, the

Board has stated that "it is 'reasonable' to expect an applicant to corroborate 'facts which

are central to his or her claim and easily subject to verification.'" *Abdulai*, 239 F.3d at

554 (quoting *In re S-M-J-,* 21 I. & N. Dec. 722 (BIA 1997)).  We may not reverse the IJ's

determination regarding the availability of corroborating evidence unless we find that "a

reasonable trier of fact is compelled to conclude that such corroborating evidence is

unavailable."  8 U.S.C. § 1252(b)(4)(D).

Here, the IJ specified the facts for which he sought corroboration and noted

Singh's failure to corroborate these facts, despite the years during which Singh had the

opportunity to collect documentation.  The IJ sought corroboration of Singh's testimony

that he was beaten by the police on three occasions, either through affidavits or other

6

evidence from those who had observed Singh's injuries. The IJ also pointed out that Singh failed to proffer evidence to corroborate his testimony that he had engaged in activities on behalf of the Akali Dal Mann party in the United States. At the hearing, the IJ asked Singh about his failure to provide evidence corroborating his testimony that he was beaten on three occasions by the police. When asked why he failed to provide corroboration from the people who treated him, brought him home or helped him to get away from the police station, Singh replied that he did not see the necessity of doing it. When the IJ asked Singh why he did not have any documentation from the doctor who treated him, Singh indicated that, in India, apprentice doctors do not issue any kind of documentation. Singh also noted that his mother is illiterate and so could not write an affidavit. However, when pressed as to why he did not ask someone else to write out an affidavit for his mother to sign, Singh stated that he did not see the necessity of getting anything from his mother. The IJ also asked Singh whether he submitted any proof of his activities on behalf of the party in the United States. Singh replied that he had not. When asked why he failed to submit any evidence to corroborate his testimony as to his party activities in the United States, Singh stated that he did not remember whether he had submitted any proof or not.

In his opinion denying Singh's request for relief, the IJ engaged in the three-step corroboration analysis that we approved in *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001). The IJ identified the facts upon which Singh relied for which the IJ found it

reasonable to expect corroboration, pointed out the absence of such corroboration on the record, and noted the lack of adequate explanations for Singh's failure to proffer corroborating evidence. The IJ properly performed the three-step *Abdulai* corroboration analysis, found inadequate corroboration of Singh's claims, and found that Singh had therefore failed to establish his eligibility for a grant of asylum, withholding of removal, or relief under the Convention Against Torture. Although Singh offered some explanation for the absence of medical documentation from the doctor who treated him, his principal explanation for the lack of other corroborating evidence was that he did not see the necessity of providing it.

We find that it was not unreasonable for the IJ to expect Singh to present evidence to corroborate his testimony that he was arrested and beaten on three occasions and that he was an active party member after coming to the United States, nor are we compelled to find that such evidence was unavailable. 8 U.S.C. § 1252(b)(4)(D). Although corroborating evidence may be unavailable in some cases because of the conditions under which the petitioner fled his native country, *see Mulanga v. Ashcroft*, 349 F.3d 123, 136-37 (3d Cir. 2003), the record in this case does not suggest that conditions in India prevented Singh from obtaining corroboration. We cannot conclude that the IJ erred in finding that, given the absence of evidence to corroborate Singh's testimony, Singh failed to meet his burden to prove his eligibility for a grant of asylum and for withholding of removal. We therefore find that there is no basis upon which to disturb the IJ's decision.

8

## III.

For the foregoing reasons, we will deny the petition for review.